*Slattery v. Hochul*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

---

AUGUST TERM 2021
No. 21-911

CHRISTOPHER T. SLATTERY, A NEW YORK RESIDENT, AND THE
EVERGREEN ASSOCIATION, INC., A NEW YORK NONPROFIT
CORPORATION, DOING BUSINESS AS EXPECTANT MOTHER CARE AND
EMC FRONTLINE PREGNANCY CENTERS,
*Plaintiffs-Appellants,*

v.

KATHLEEN C. HOCHUL, IN HER OFFICIAL CAPACITY AS THE
GOVERNOR OF THE STATE OF NEW YORK; ROBERTA REARDON, IN HER
OFFICIAL CAPACITY AS THE COMMISSIONER OF THE LABOR
DEPARTMENT OF THE STATE OF NEW YORK; AND LETITIA JAMES, IN
HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE
OF NEW YORK,
*Defendants-Appellees.**

---

On Appeal from the United States District Court
for the Northern District of New York

---

ARGUED: NOVEMBER 29, 2021
DECIDED: FEBRUARY 27, 2023

---

\* The Clerk of Court is directed to amend the caption as set forth above.

Before:      PARK, NARDINI, and MENASHI, *Circuit Judges*.

The Evergreen Association, Inc., doing business as Expectant Mother Care and EMC FrontLine Pregnancy Centers, and its president Christopher Slattery (collectively "Evergreen") bring this action against New York state officials to enjoin their enforcement of New York's Labor Law § 203-e against Evergreen. Among other things, the statute prohibits employers from taking adverse employment actions against employees for their reproductive health decisions. Evergreen argues that the statute unconstitutionally burdens its right to freedom of expressive association—as guaranteed by the First and Fourteenth Amendments—by preventing it from disassociating itself from employees who seek abortions. Evergreen contends that the statute undermines its anti-abortion message as a crisis pregnancy center because associating with such employees contradicts its central message. Evergreen also raises freedom of speech, free exercise of religion, and void for vagueness challenges to the statute. The district court granted the state's motion to dismiss all claims at the pleading stage. We hold that the district court erred in dismissing the expressive association claim.

--------

STEPHEN M. CRAMPTON, Thomas More Society, Chicago, IL (Mary Catherine Hodes, Thomas More Society, Chicago, IL, Timothy Belz, J. Matthew Belz, Clayton Plaza Law Group, St. Louis, MO, *on the brief*), *for Plaintiffs-Appellants*.

FREDERICK A. BRODIE, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Andrea Oser,

2

Deputy Solicitor General, *on the brief*), for Letitia James, Attorney General of the State of New York, Albany, NY, *for Defendants-Appellees*.

Geoffrey T. Blackwell, American Atheists, Inc., Washington, DC, *for Amicus Curiae American Atheists*.

Gabriella Larios, Katharine Es Bodde, Allison S. Bohm, Robert Hodgson, Molly K. Biklen, New York Civil Liberties Union Foundation, New York, NY, *for Amicus Curiae New York Civil Liberties Union*.

Richard B. Katskee, Alex J. Luchenitser, Adrianne M. Spoto, Americans United for Separation of Church and State, Washington, DC, *for Amici Curiae Americans United for Separation of Church and State, Catholics for Choice, Central Conference of American Rabbis, Covenant Network of Presbyterians, Disciples Center for Public Witness, Disciples for Choice, Disciples Justice Action Network, Equal Partners in Faith, Hadassah, the Women's Zionist Organization of America, Hindu American Foundation, Men of Reform Judaism, Methodist Federation for Social Action, Muslim Advocates, Muslim Public Affairs Council, National Council of Jewish Women, Reconstructionist Rabbinical Association, Union for Reform Judaism, Unitarian Universalist Association, and Women of Reform Judaism*.

MENASHI, *Circuit Judge*:

The Evergreen Association, Inc., doing business as Expectant Mother Care and EMC FrontLine Pregnancy Centers, and its president, Christopher Slattery (collectively, "Evergreen"), bring this action against New York state officials to enjoin their enforcement of New York Labor Law § 203-e against Evergreen. The statute prohibits

3

employers from taking adverse employment actions against employees for their "reproductive health decision[s]." N.Y. Lab. L. § 203-e(2)(a). Evergreen argues that the statute unconstitutionally burdens its right to freedom of expressive association—as guaranteed by the First and Fourteenth Amendments—by preventing it from disassociating itself from employees who, among other things, seek abortions. Evergreen contends that the statute undermines its anti-abortion message as a crisis pregnancy center because associating with such employees contradicts its central message. Evergreen also raises freedom of speech, free exercise of religion, and void for vagueness challenges to the statute. The district court granted the state's motion to dismiss all claims at the pleading stage.

We hold that Evergreen stated a plausible claim that the labor law unconstitutionally burdens its right to expressive association. We affirm in part and reverse in part the district court's dismissal of Evergreen's complaint and remand for further proceedings consistent with this opinion.

## BACKGROUND

### I

The New York Legislature enacted Senate Bill S660, popularly known as the "Boss Bill" and codified as New York Labor Law § 203-e, on November 8, 2019. 2019 N.Y. Laws Ch. 457. The law provides that "[a]n employer shall not … discriminate nor take any retaliatory personnel action against an employee with respect to compensation, terms, conditions, or privileges of employment because of or on the basis of the employee's or dependent's reproductive health decision making." N.Y. Lab. L. § 203-e(2)(a). The Boss Bill additionally forbids employers from "accessing an

4

employee's personal information regarding the employee's … reproductive health decision making." *Id.* § 203-e(1). "[R]eproductive health decision making" is defined as including, but is not limited to, "a decision to use or access a particular drug, device or medical service." *Id.* § 203-e(2)(a). The statute's severability clause provides that, should a court declare any part of the statute invalid, the court should not declare the rest of the statute invalid. *See id.* § 203-e(7).

Unlike other antidiscrimination statutes, the Boss Bill contains no express exemption for religious employers or for small employers with objections to abortion. *Compare* N.Y. Lab. L. § 203-e, *with* 42 U.S.C. § 2000e-1(a) (exempting religious employers from Title VII's prohibition against religious discrimination in hiring).

In addition to government enforcement, the Boss Bill authorizes a private right of action. "An employee may bring a civil action in any court of competent jurisdiction against an employer alleged to have violated the provisions of [§ 203-e]" and may seek damages (including attorneys' fees), injunctive relief, an order of reinstatement, and/or liquidated damages. N.Y. Lab. L. § 203-e(3). Section 21(1) of New York's Labor Laws provides that the commissioner of the New York Department of Labor "[s]hall enforce all the provisions of this chapter [including § 203-e(1)] and may issue such orders as he finds necessary directing compliance with any provision of this chapter, except as in this chapter otherwise provided."

## II

The Evergreen Association, Inc. is a New York nonprofit organization that operates as Expectant Mother Care and EMC FrontLine Pregnancy Centers. It is opposed to abortion and,

5

consistent with that belief, it has operated a network of pregnancy crisis centers throughout New York City since 1985. These centers discourage abortion and provide pregnant women with ultrasounds, counseling, and information on adoption. Slattery founded the Evergreen Association, Inc. and continues to serve as its president.

Because of moral and religious objections, Evergreen hires only employees who oppose abortion and extramarital sexual relationships. Evergreen asks each prospective employee whether he or she is "pro-choice or pro-life," and it will not consider for employment an applicant who expresses support for abortion. J. App'x 50. Evergreen explains that, through its employees, it "professes and promotes the moral and religious belief that all human life is equally valuable and deserving of protection, from fertilization to natural death." Appellant's Br. 7. For that reason, Evergreen will retain only those personnel who can credibly communicate to patients its "opposition to abortion and to sexual relationships outside of marriage and related use of potentially abortifacient contraception." *Id*. at 8.

Evergreen represents that it intends to continue these hiring practices. It plans to state in employment advertisements that "it is seeking only pro-life candidates" and will not hire or retain employees who violate its policies against procuring abortions or engaging in extramarital sexual relations. J. App'x 50-51.

**III**

In January 2020, Evergreen filed a complaint for declaratory and injunctive relief, naming state officials as defendants in their official capacities. Evergreen sought a declaration that the Boss Bill was unconstitutional and an injunction prohibiting the state from

6

enforcing the Boss Bill against Evergreen. Evergreen argued that the statute violated the federal Constitution in four ways. First, it violated Evergreen's First and Fourteenth Amendment right to freedom of expressive association. Second, it violated Evergreen's First and Fourteenth Amendment right to freedom of speech. Third, it violated Evergreen's First and Fourteenth Amendment right to the free exercise of religion. Fourth, it violated Evergreen's Fourteenth Amendment right to due process because it was unconstitutionally vague.

The state moved to dismiss the complaint, arguing that the Boss Bill was a constitutional exercise of the police power in furtherance of the state's interest in nondiscrimination. The state said that it acted to protect its citizens' federal constitutional right to privacy in the confidentiality of their medical information and autonomy in "decisions relating to their bodies, health and family planning." J. App'x 81. The state further argued that because the Boss Bill was generally applicable, "all New York employers, including religious based ones … must comply with it." *Id*.

The district court granted the state's motion to dismiss, rejecting all four of Evergreen's arguments. *Slattery v. Cuomo*, 531 F. Supp. 3d 547 (N.D.N.Y. 2021). First, the district court rejected Evergreen's claim that the statute prohibits the free exercise of its religion. *Id.* at 559-62. The district court concluded that the law was both religion-neutral and generally applicable and that it did not "target[] religious conduct in an impermissible way." *Id.* at 561-62. When the state "seeks to enforce a law that is neutral and of general applicability, it need only demonstrate a rational basis for its enforcement." *Id.* at 562 (alteration omitted) (quoting *Fortress Bible Church v. Feiner*, 694 F.3d 208, 220 (2d Cir. 2012)). The district court

7

concluded that "the statute bears a rational relationship" to the state's interests in protecting "individuals' right to privacy and personal autonomy as it relates to health-care decisions surrounding reproduction" and "in protecting against workplace discrimination." *Id.*

Second, the district court held that the statute did not abridge the freedom of speech. *Id.* at 565-66. Because it concluded that the statute was content-neutral, the district court applied intermediate scrutiny. *Id.* at 565. The district court determined that the statute survived such scrutiny because the regulations of speech "are reasonable, are narrowly tailored to serve a significant governmental interest, and leave open ample alter[n]ative channels for communication of … information." *Id.* (quoting *Mastrovincenzo v. City of New York*, 435 F.3d 78, 98 (2d Cir. 2006)). The statute neither "prevent[s] employers from speaking on the issue and explaining the views and standards of the organization" nor "prevent[s] employers from advocating for their views to the general public." *Id.* at 565-66.

Third, the district court decided that Evergreen failed to state a claim that the Boss Bill infringed its right to freedom of expressive association. *Id.* at 569. The district court said that Evergreen had adequately alleged that it "engage[s] in expressive association," *id.* at 567, and therefore it has the right not to "accept members it does not desire," *id.* at 568 (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984)). The district court also explained that the plaintiffs "are somewhat correct to complain that they may be forced to associate with employees or prospective employees whose actions indicate that they do not share their views on abortion and other family planning issues." *Id.* But the district court concluded that the "incidental limitations on the Plaintiffs' associational rights" did not "place a

8

restriction on their ability to advocate against abortion or contraception." *Id.* at 569. It posed only a "danger that others could call the Plaintiffs hypocrites" and, "[g]iven the way that our political discourse currently works, such allegations are surely a feature of advocacy in the highly charged area in which the Plaintiffs engage." *Id.* The district court ruled that the statute "needs only to survive rational basis scrutiny" and that it "does so." *Id.*

Fourth, the district court rejected Evergreen's argument that the statute was unconstitutionally vague. According to the district court, an "ordinary employer" would understand that the statute prohibits "accessing an employee['s] medical record to determine whether that employee had used birth control or not, or had an abortion or carried a child to term," and "discrimination against or retaliation against an employe[e] for decisions made about birth control or pregnancy." *Id.* at 571-72.

Evergreen timely appealed.

## STANDARD OF REVIEW

"We review a district court's grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Henry v. County of Nassau*, 6 F.4th 324, 328 (2d Cir. 2021) (internal quotation marks omitted). "[A] complaint will survive a motion to dismiss under Rule 12(b)(6) if it alleges facts that, taken as true, establish plausible grounds to sustain a plaintiff's claim for relief." *Cornelio v. Connecticut*, 32 F.4th 160, 168 (2d Cir. 2022).

9

**DISCUSSION**

Evergreen argues that it plausibly alleged that New York Labor Law § 203-e (1) violates its right to freedom of expressive association, (2) violates its right to freedom of speech, (3) violates its right to the free exercise of religion, and (4) is impermissibly vague. We hold that Evergreen plausibly alleged that § 203-e significantly burdens its right to freedom of expressive association and does not survive strict scrutiny. Accordingly, we reverse the district court's dismissal of this aspect of the complaint. We otherwise affirm.

**I**

Evergreen argues that § 203-e impermissibly burdens its First and Fourteenth Amendment right to freedom of expressive association. The district court acknowledged that Evergreen "engage[s] in expressive association" and that § 203-e imposes limitations on its expressive associational rights. *Slattery*, 531 F. Supp. 3d at 567. Even so, the district court characterized those limitations as "incidental" and held that § 203-e was subject only to rational basis scrutiny. *Id.* at 569.

We agree with the district court that Evergreen is engaged in expressive association. But we hold that the district court erred in concluding that § 203-e does not significantly affect Evergreen's expressive activity. Instead, the district court should have applied strict scrutiny. And because the state has not at this stage demonstrated that § 203-e is the least restrictive means to achieve a compelling governmental interest, we reverse the district court's dismissal of Evergreen's expressive association claim.

10

**A**

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. CONST. amend. I. The Supreme Court "has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment" because "[a]n individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed." *Roberts*, 468 U.S. at 618, 622. The Court has accordingly "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Id.*; *see also NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958) ("Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association."). This "freedom of expressive association," the Court has explained, "presupposes a freedom not to associate" because "[t]here can be no clearer example of an intrusion into the internal structure or affairs of an association than a regulation that forces the group to accept members it does not desire." *Roberts*, 468 U.S. at 622-23.[1]

---

[1] The Supreme Court has held that the Fourteenth Amendment incorporates the protections of the First Amendment against state

11

In *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000), the Supreme Court set forth a three-part inquiry for evaluating expressive association claims. Citing *Dale*, the Third Circuit has laid out the test succinctly: "First, [we] conside[r] whether the group making the claim engaged in expressive association. [Second, we] analyz[e] whether the state action at issue significantly affected the group's ability to advocate its viewpoints. [Third, we] weig[h] the state's interest implicated in its action against the burden imposed on the associational expression to determine if the state interest justified the burden." *Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 442 (3d Cir. 2000) (citations omitted). If we determine that the state action imposes "severe burdens on associational rights" at the second step, we apply "strict scrutiny, in which case the restriction survives only if it is narrowly drawn to advance a compelling state interest," at the third step. *Jacoby & Meyers, LLP v. Presiding Justices*, 852 F.3d 178, 191 (2d Cir. 2017).

At the first step, "[a]n association must merely engage in expressive activity that could be impaired in order to be entitled to protection." *Dale*, 530 U.S. at 655. As the district court correctly found, Evergreen has "alleged facts sufficient to make plausible [the] claim that [it] engage[s] in expressive activity." *Slattery*, 531 F. Supp. 3d at 567. The district court explained that "the allegations in the Complaint clearly indicate that Plaintiffs aim to share their pro-life

governments. *See, e.g.*, *Cantwell v. Connecticut*, 310 U.S. 296, 305 (1940) (free exercise of religion); *De Jonge v. Oregon*, 299 U.S. 353, 364 (1937) (right of the people peaceably to assemble); *Gitlow v. New York*, 268 U.S. 652, 666 (1925) (freedom of speech and of the press). It follows that the right to freedom of expressive association also applies against state governments. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 655-56 (2000).

12

message with the world." *Id.* And "[w]hile they also offer health-care services to pregnant women, Plaintiffs clearly explain that they do so in the context of sharing with those women their message concerning abortion, sex outside of marriage, and contraception." *Id.* For these reasons, we agree with the district court that Evergreen engages in expressive association.

**B**

Next, we consider whether § 203-e "significantly burden[s]" Evergreen's right to freedom of expressive association. *Dale*, 530 U.S. at 653; *see also Jacoby & Meyers*, 852 F.3d at 191 ("Strict scrutiny applies only when a challenged regulation imposes 'severe burdens' on associational rights."). The district court recognized that under the state law, the plaintiffs would be "forced to associate with employees or prospective employees whose actions indicate that they do not share their views." *Slattery*, 531 F. Supp. 3d at 568. But the district court decided that this burden on Evergreen's expressive association rights was incidental rather than severe. We disagree. A "regulation that forces the group to accept members it does not desire … may impair the ability of the original members to express only those views that brought them together." *Roberts*, 468 U.S. at 623.

This case resembles *New Hope Family Services v. Poole*, 966 F.3d 145, 179 (2d Cir. 2020). In *New Hope*, we reviewed a district court's dismissal of an adoption ministry's expressive association claim against the New York State Office of Children and Family Services ("OCFS"). *See id.* at 148-49. The adoption ministry—a voluntary, privately funded Christian ministry—had a policy against recommending "adoption by unmarried or same-sex couples because it [did] not think such placements are in the best interests of a child."

13

*Id.* at 149. Instead, New Hope would refer these couples to other adoption agencies. *Id.*

OCFS informed New Hope that this policy violated state antidiscrimination law and gave the adoption ministry a choice: conform to the antidiscrimination law or shut down the adoption agency. *Id.* New Hope maintained that OCFS's actions in applying New York law would force "it to include unmarried or same-sex couples in its comprehensive evaluation, training, and placement programs and adoptive-parent profiles," thus altering "New Hope's message and counseling to adoptive families and birthparents." *Id.* at 178 (internal quotation marks and alterations omitted). Moreover, New Hope complained that OCFS, in enforcing the state law, "may require New Hope to correct or discipline employees who, sharing New Hope's religious beliefs, act on, or even express, those beliefs in interacting with birthparents or prospective adoptive parents." *Id.* at 179 (internal quotation marks and alterations omitted).

We reversed the district court's dismissal of New Hope's expressive association claim. We held it was "premature" to conclude—as the district court in that case did—that these requirements constituted merely a "slight impairment." *Id.* We explained that "[c]ompelled hiring, like compelled membership, may be a way in which a government mandate can affect in a significant way a group's ability to advocate public or private viewpoints." *Id.* (internal quotation marks and alterations omitted).

The district court here declined to apply strict scrutiny because it decided that the burden on Evergreen's expressive association rights was incidental rather than severe. That determination was erroneous. After weighing all reasonable inferences in Evergreen's

favor, we conclude that Evergreen plausibly alleged that § 203-e imposes severe burdens on Evergreen's right to freedom of expressive association. The statute forces Evergreen to employ individuals who act or have acted against the very mission of its organization. Evergreen alleged that it "provides counseling, education," and "information to … women during their decision-making processes in an untimely pregnancy" and that it provides such counseling "from a life-affirming, abstinence-promoting perspective only." J. App'x 49-50. To that end, Evergreen "hires or retains only personnel" who "effectively convey" its "mission and position regarding 'reproductive health decisions.'" *Id.* at 50. The right to expressive association allows Evergreen to determine that its message will be effectively conveyed only by employees who sincerely share its views. To decide whether someone holds certain views—and therefore would be a reliable advocate—Evergreen asks whether that person has engaged or will engage in conduct antithetical to those views. Evergreen has plausibly alleged that, by foreclosing Evergreen's ability to reject employees whose actions suggest that they believe the opposite of the message it is trying to convey, § 203-e severely burdens Evergreen's First Amendment right to freedom of expressive association. *See Roberts*, 468 U.S. at 622 (noting that "forc[ing a] group to accept members it does not desire … may impair the ability of the original members to express only those views that brought them together"). For this reason, strict scrutiny applies.

## C

Still, "[t]he right to associate for expressive purposes is not … absolute. Infringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means

15

significantly less restrictive of associational freedoms." *Roberts*, 468 U.S. at 623.[2] As we have described this standard, "[p]recision of regulation must be the touchstone," *Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 997 (2d Cir. 1997) (quoting *NAACP v. Button*, 371 U.S. 415, 438 (1963)), and "[a]n infringement of the First Amendment right to expressive association—even if in pursuit of a compelling government objective—is justified only if there is no less restrictive means of achieving that end," *id.*

We hold that at this stage of the litigation, New York has not shown that § 203-e satisfies this standard. As an initial matter, when applying tiers of scrutiny higher than rational basis, "the norm is to wait until the summary judgment stage of the litigation to address the ultimate question of whether the [regulation] should stand." *Cornelio*, 32 F.4th at 172 (quoting *Graff v. City of Chicago*, 9 F.3d 1309, 1322 (7th Cir. 1993)). At this stage, New York cannot show that § 203-e is the least restrictive means to achieve a compelling objective.

It may be the case that preventing discrimination based on one's choice to engage in certain, legally authorized conduct is a compelling state interest.[3] But we need not decide that question here.

---

[2] *But cf.* David E. Bernstein, *The Right of Expressive Association and Private Universities' Racial Preferences and Speech Codes*, 9 Wm. & Mary Bill Rts. J. 619, 625 (2001) ("[O]nce the infringement upon the right to expressive association has been recognized, the party asserting the right will win, unless the government can assert the type of truly compelling interest that (almost never) trumps First Amendment rights in other contexts.").

[3] According to the state, § 203-e is justified by compelling interests "in protecting its residents' right to privacy in 'personal decisions relating to marriage, procreation, contraception, family relationships, child rearing,

Even if we answer in the affirmative, that interest cannot overcome the expressive rights of an association dedicated to outlawing or otherwise opposing that specific conduct. For this step of the inquiry, *Dale* instructs us to engage in a balancing of interests, setting "the associational interest in freedom of expression … on one side of the scale" and "the State's interest on the other." 530 U.S. at 658-59. Here, drawing all inferences in Evergreen's favor, the state's interest cannot overcome the expressive association right of an organization such as Evergreen. On one side of the scale is the individual's right not to be discriminated against for certain reproductive choices, such as having an abortion. On the other side is the First Amendment right of a particular association—in this case, Evergreen—to advocate against that conduct. If Evergreen had the right to exclude employees who have had an abortion, the right to be free of discrimination for having an abortion will be impaired only to the limited extent that a person cannot join the specific group or groups that oppose abortion. But if the state could require an association that expressly opposes abortion to accept members who engage in the conduct the organization opposes, it would severely burden the organization's right of expressive association. "It would be difficult," to say the least, for an organization "to sincerely and effectively convey a message of disapproval of certain types of conduct if, at the same time, it must accept members who engage in that conduct." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 863 (7th Cir. 2006). Evergreen's beliefs about the morality of abortion are "its defining values; forcing it to accept as members those who engage in or approve of [that] conduct would cause the group as it currently identifies itself to cease to exist." *Id.*

and education,'" Appellees' Br. 35 (quoting *Lawrence v. Texas*, 539 U.S. 558, 559 (2003)), and in "[e]radicating discrimination," *id.* at 36.

Accordingly, the balancing of interests favors the expressive association that opposes the conduct the state would protect against discrimination.

"The conduct at issue—*i.e.*, discrimination in membership and leadership—is of First Amendment concern not simply because it is freighted with or motivated by ideas, but because it goes to the structure and identity of the association as an association."[4] For that reason, one must "distinguish for First Amendment purposes" between requiring—for example—the National Organization for the Reform of Marijuana Laws "to comply with laws prohibiting the distribution of controlled substances," on the one hand, and requiring that same organization "to admit anti-drug crusaders" to its membership, on the other, because the latter requirement would "undermine or transform their values and message."[5]

The district court concluded that § 203-e imposed only "incidental limitations on [Evergreen's] associational rights" because it would not "place a restriction on their ability to advocate against abortion or contraception." *Slattery*, 531 F. Supp. 3d at 569. It posed only a "danger that others could call the Plaintiffs hypocrites" and Evergreen could always respond by "draw[ing] a distinction for the public between what they believe and what the State requires." *Id.* This reasoning, which could always justify a state's forcing an association to accept members it does not desire, devalues Evergreen's interest in expressive association. The right of Evergreen to choose those who promote its views "is not protected by the First

---

[4] Richard W. Garnett, *Jaycees Reconsidered: Judge Richard S. Arnold and the Freedom of Association*, 58 Ark. L. Rev. 587, 606 (2005).

[5] *Id.*

Amendment simply because it 'communicates' a message, but because an expressive association's membership and leadership is integral to its ability to play an important role in nurturing the 'freedom of speech.'"[6] The "freedom of speech protected by the First Amendment includes, and is well served by, protections not only for associations' members—their privacy rights, their own speech rights, and so on—but also for their own identity, distinctiveness, and message."[7] An "individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed." *Roberts*, 468 U.S. at 622.

Freedom of expressive association vindicates the "important structural role" that "expressive associations play … in our civil society and discourse."[8] For an expressive association that opposes certain conduct, the government's general interest in bolstering the legal right to engage in that conduct gives way to the freedom of those in the association to join together to express a different view. Here, Evergreen has a right to limit its employees to people who share its views and will effectively convey its message.

Thus, the district court erred in dismissing Evergreen's expressive association claim. At this stage of the litigation, Evergreen has sufficiently stated a claim that enforcing § 203-e against it would

---

[6] Garnett, *supra* note 4, at 606 (alteration omitted).

[7] *Id.*

[8] Garnett, *supra* note 4, at 606.

violate its First Amendment right to freedom of expressive association. We reverse the district court's dismissal of this claim.

## II

Evergreen raises three other constitutional challenges to the Boss Bill. According to Evergreen, § 203-e violates its First Amendment rights to freedom of speech and the free exercise of religion, even apart from the freedom of expressive association right. Evergreen also argues that § 203-e is impermissibly vague under the Fourteenth Amendment. The district court dismissed these claims. We affirm.

## A

Apart from its freedom of expressive association claim, Evergreen argues that § 203-e infringes its right to freedom of speech. Evergreen notes that its "uniquely expressive nature means that the people [it] hires affect its message," likening itself to film and news companies. Appellant's Br. 34. Evergreen further argues that the "no waiver" provision of the Boss Bill, § 203-e(2)(b), "prevents Evergreen from setting an expectation that employees will act consistently with organizational beliefs" because that provision forbids Evergreen from requiring employees to waive the right to avoid employment consequences for reproductive healthcare decisions. *Id.* at 37. Evergreen contends that § 203-e is therefore a content-based speech regulation subject to strict scrutiny. We disagree.

"It is possible to find some kernel of expression in almost every activity a person undertakes … but such a kernel is not sufficient to bring the activity within the protection of the First Amendment." *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989). To determine whether

20

"particular conduct possesses sufficient communicative elements to bring the First Amendment into play," courts consider "whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (internal quotation marks and alterations omitted). "[I]t is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies." *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984).

Evergreen has not shown that the acts of hiring, terminating, or continuing to employ persons are themselves expressive conduct that communicates its views. The Supreme Court has rejected "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376 (1968).

"When … an individual engages in conduct that does not manifest an intent to convey a particularized message, the First Amendment does not come into play." *United States v. Thompson*, 896 F.3d 155, 164 (2d Cir. 2018) (internal quotation marks omitted). While we recognize that Evergreen's freedom to make personnel decisions affects its ability to advocate its views and thereby implicates its freedom of expressive association, *see supra* Part I, we are not persuaded that the state's attempt to regulate those personnel decisions is itself a regulation of speech. We affirm the district court's dismissal of this claim.

**B**

We turn next to Evergreen's claim that § 203-e violates its rights under the Free Exercise Clause, as incorporated by the Fourteenth

21

Amendment. Evergreen argues that the Boss Bill is neither religion-neutral nor generally applicable. The district court dismissed the Free Exercise Clause claim after concluding that § 203-e is religion-neutral and generally applicable. We agree and affirm.

The Free Exercise Clause provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST. amend. I. That clause, however, "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." *Agudath Israel v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020) (quoting *Emp. Div. v. Smith*, 494 U.S. 872, 879 (1990)). "Official action burdening religious conduct that is *not* both neutral and generally applicable, however, is subject to strict scrutiny." *Id.* (internal quotation marks omitted).

"A law is not neutral … if it is specifically directed at a religious practice." *Cent. Rabbinical Cong. of the U.S. v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014) (internal quotation marks and alteration omitted). To be neutral, a law must not "facially regulate a religious practice without a secular meaning discernible from the language or context" and must also be "neutral in operation, as assessed in practical terms." *Id.* at 194 (internal quotation marks omitted). In assessing operational neutrality, a court "must consider 'the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body.'" *New Hope*, 966 F.3d at 163 (quoting *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 540 (1993)).

In this case, the statute is facially neutral. Section 203-e "appl[ies] equally to all [employers], both secular and religious." *Id.* And Evergreen has not shown that § 203-e is operationally discriminatory. Evergreen contends that the legislative history of § 203-e shows that it was intended to "target[] religious conduct for distinctive treatment." *Lukumi*, 508 U.S. at 546. There may be some merit to this argument. The bill's sponsor in the State Senate, Senator Jen Metzger, said that § 203-e was necessary because the Supreme Court's decision in *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014)—which recognized that a privately held, for-profit corporation could claim protection under the Religious Freedom Restoration Act—had created "a dangerous, slippery slope" in which "lawsuits have been filed by employers determined to deny workers coverage of reproductive health services and products based on the employer's own personal and political beliefs." N.Y. State Sen., Floor Transcript of Regular Proceedings, Jan. 22, 2019, at 433-34. "The Boss Bill seeks to prevent this further encroachment by employers into the private decisions of employees." *Id.* at 434. The bill's sponsor in the State Assembly, Assemblywoman Ellen Jaffee, explained that the bill was necessary because "[e]mployers should not be allowed to use their personal beliefs to discriminate against their employees." N.Y. State Assembly, Transcript of Session Part II, Jan. 22, 2019, at 132.

These statements could be read to suggest hostility on the part of some legislators to the religious exercise of employers. But the statements do not establish that the purpose of the legislature was to target religion. "What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork." *O'Brien*, 391 U.S. at 384; *see also Michael M. v. Superior Court*, 450 U.S.

23

464, 470 (1981) ("[I]ndividual legislators may have voted for the statute for a variety of reasons."); *cf. Stormans, Inc. v. Wiesman*, 136 S. Ct. 2433, 2437 n.3 (Alito, J., dissenting from the denial of certiorari) ("It is an open question whether a court considering a free exercise claim should consider evidence of individual lawmakers' personal intentions, as is done in the equal protection context."). The legislative debate, and the legislation itself, was generally directed at discrimination in the workplace and employee privacy. A sponsor of the bill also affirmed that because of the ministerial exception, § 203-e would not apply to religious employers who fire employees for religious reasons. *See* N.Y. State Assembly, Transcript of Session Part II, Jan. 22, 2019, at 127 (Statement of Assemblywoman Jaffee) ("[T]he First Amendment's ministerial exception may be used as a defense … in court, but is not a jurisdictional bar for bringing a discrimination complaint against an employer. And the court would then determine whether or not the employee is considered a minister for the purposes of [the] religious organization that is being accused of this … kind of a discrimination.").

The Boss Bill is also generally applicable. "The general applicability requirement prohibits the government from 'in a selective manner imposing burdens only on conduct motivated by religious belief.'" *Cent. Rabbinical Cong.*, 763 F.3d at 196 (alteration omitted) (quoting *Lukumi*, 508 U.S. at 543). Section 203-e applies to any employer that takes adverse action against an employee for a reproductive health decision. The statute does not provide for individualized exemptions. *See Smith*, 494 U.S. at 884 ("[W]here the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason."); *see also Fulton v. City of Philadelphia*, 141 S. Ct.

1868, 1877 (2021); *Bowen v. Roy*, 476 U.S. 693, 708 (1986) (plurality opinion). Because § 203-e is a neutral law of general applicability, it need only satisfy rational basis review to survive Evergreen's claim under the Free Exercise Clause. *Cent. Rabbinical Cong.*, 763 F.3d at 193.[9]

For these reasons, we affirm the district court's dismissal of Evergreen's Free Exercise Clause challenge.

**D**

Evergreen also challenges § 203-e as unconstitutionally vague. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). This doctrine "guards against arbitrary or discriminatory law enforcement" and "guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (quoting *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972)). "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

---

[9] Evergreen further argues that the ministerial exception exempts it from § 203-e. Evergreen raised this argument for the first time on appeal, and "[a]rguments raised for the first time on appeal are deemed waived." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 163 (2d Cir. 2011). If Evergreen is ever subject to suit under § 203-e, it may raise the ministerial exception as a defense to a suit concerning a particular employee. *See Hosanna-Tabor Evangelical Lutheran Church v. EEOC*, 565 U.S. 171, 193, 195 n.4 (2012) ("[T]he exception operates as an affirmative defense to an otherwise cognizable claim.").

25

Evergreen argues that it "and others similarly situated have no way to know whether and to what extent their speech or conduct actually violates the law." Appellant's Br. 52. Evergreen suggests that four statutory terms render § 203-e impermissibly vague: "reproductive health decision making," "employee," "employer," and "proposes to commit a violation." *Id.* (quoting § 203-e). We disagree.

The terms "reproductive health decision making" and "proposes to commit a violation" are sufficiently clear that an ordinary reader would know what each term entails. The statute clarifies that the term "reproductive health decisions" includes, but is not limited to, a decision to use or to access "a particular drug, device or medical service." N.Y. Lab. L. § 203-e(1), (2)(a), (2)(b). As the district court observed, "the statute permits an ordinary employer to understand that the law prohibits accessing an employees' medical record to determine whether that employee had used birth control or not, or had an abortion or carried a child to term." *Slattery*, 531 F. Supp. 3d at 571.

The term "proposes to commit a violation" does not encompass—as Evergreen argues that it might—such scenarios as (1) "employers contemplating aloud whether they can comply with Section 203-E, even if they eventually decide to do so"; (2) "seek[ing] legal protection from having to comply with Section 203-E"; or (3) "discuss[ing] with prospective or current employees their views on 'reproductive health decision making.'" Appellant's Br. 54-55. *Proposing* "to commit a violation" involves a contemplated violation of the statute; it is not equivalent to considering the feasibility of compliance or the seeking of legal advice as to whether compliance is required. Nor could this language encompass discussing employees'

26

views on reproductive health issues. As the state acknowledged at oral argument, § 203-e does not prohibit Evergreen from requiring employees to express its stated position on those issues. The state conceded that "nothing in this statute prevents an employer from asking an employee, 'Are you pro-life or pro-choice?' And nothing in this statute prevents an employer from hiring only pro-life employees."[10] Moreover, the state recognized that even under § 203-e, "[i]f the employee does not effectively communicate the employer's message, they can be fired for that, because their job is to communicate a message."[11] We rely on the state's interpretation of the statute to conclude that § 203-e does not prohibit an employer from discussing the views of prospective or current employees with respect to reproductive health decision making. To "propose[] to commit a violation," Evergreen would need to express an intent to violate § 203-e.

The terms "employee" and "employer" are not vague either. New York's labor laws provide that "'[e]mployee' means a mechanic, workingman or laborer working for another for hire." N.Y. Lab. L. § 2(5), and that "'[e]mployer' means the person employing any such" employee, *id.* § 2(6). Evergreen suggests that the definition "appears to address manual labor." Appellant's Br. 54. Yet while the words "mechanic" and "workingman" might typically connote manual labor, the overall definition indicates that "an employee is any person

---

[10] Oral Argument Audio Recording at 27:12.

[11] *Id.* at 37:16.

who has been hired to work." *Bessa v. Anflo Indus., Inc.*, 10 N.Y.S.3d 835, 839 (N.Y. Sup. Ct. 2015).[12]

We affirm the district court's dismissal of Evergreen's vagueness challenge.

## CONCLUSION

For these reasons, we reverse the judgment of the district court with respect to Evergreen's expressive association claim, affirm the judgment in all other respects, and remand to the district court for further proceedings consistent with this opinion.

---

[12] The state also takes the position that, "as used in the Labor Law, the term 'employee' 'does not apply to a volunteer who performs a service gratuitously.'" Appellees' Br. 59 (quoting *Stringer v. Musacchia*, 11 N.Y. 3d 212, 215 (2008)).